UNITED STATES of America,
Plaintiff-Appellant,
Lilly Russell et al., Plaintiffs-Appellants,

v.

GREENWOOD MUNICIPAL SEPARATE
SCHOOL DISTRICT, Defendant-
Appellee.

No. 29637.

United States Court of Appeals,
Fifth Circuit.

July 2, 1971.

John McCreery, Alix Sanders, Greenwood, Miss., for Russell and others.

Jerris Leonard, Asst. Atty. Gen., Joseph B. Scott, Atty., Dept. of Justice, Civil Rights Div., Washington, D. C., for the United States.

Hardy Lott, Greenwood, Miss., for defendant-appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

BY THE COURT:

The judgment of the district court is vacated,[1] and the cause is remanded to the district court with directions that

---

1. Under the stringent requirements of Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969), which this Court has carried out in United States v. Hinds County School Board, 5 Cir. 1969, 417 F.2d 852, and of Carter v. West Feliciana Parish School Board, 396 U.S. 290, 90 S.Ct. 608,

24 L.Ed.2d 477 (1970), implemented in Singleton v. Jackson Municipal Separate School District, 5 Cir. 1970, 419 F.2d 1211, this Court has judicially determined that the ordinary procedures for appellate review in school desegregation cases have to be suitably adopted to assure that each system whose case is before us "begin im-

the defendant school board be ordered to reinstate in teaching positions for the 1971–72 school year the seven black teachers who were dismissed for their refusal to accept teaching positions in black schools, provided that the seven black teachers desire at this time to be reinstated as teachers in the defendant school system.[2] The motion of the appellants, Lilly Russell, et al, for payment by the defendant school district of back pay and lost pension benefits for improper dismissal is denied.

The mandate shall issue forthwith.

Vacated and remanded with directions

COLEMAN, Circuit Judge (concurring in part and dissenting in part).

I concur in that part of the opinion which denies back pay and "lost pension benefits".

I dissent from that part which directs that these teachers be offered reinstatement. As a practical matter, I suppose the point is not too important. By a report filed with the Court we learn that one of the teachers now works for the Department of Justice, one plans to teach next year in Indianola, one at Rosedale, and three in Chicago, while the other two have been teaching in Kansas City and Milwaukee.

I am most reluctant, except in cases where the Constitution clearly requires it, to put the courts in the business of making teacher assignments within the school system, especially where the District Judge has denied relief. I think that is what this opinion does, so I respectfully dissent as to that feature of the case.

---

mediately to operate as unitary school systems". Upon consideration of the parties' memoranda and so much of the record as is available or determined to be needed by the Court, the Court has proceeded to dispose of this case is an extraordinary matter. Rule 2, F.R.A.P.

2. This situation arises out of a district court order to the defendant school district to desegregate its faculty in accordance with Singleton v. Jackson Municipal Separate School District, 3 Cir. 1970, 419 F.2d 1211. To this end the school district first asked among the black and white teachers for volunteers to go into schools where the race of the teacher was in the minority. The seven black teacher here involved were among 33 black teachers who volunteered to teach in formerly all-white schools; no white teachers volunteered. The school district then conducted a lottery among the white teachers to determine those white teachers who would be reassigned to formerly all-black schools. Of the 21 white teachers chosen in the lottery, 14 resigned. Black teachers were assigned to fill the positions left by the resigning white teachers. Seven white teachers refused either to resign or accept a transfer to the black schools, claiming they had valid and binding contracts with the school district to teach in the schools to which they had been assigned initially. The school district acquiesced in the claim of the white teachers, and since no other vacancies were available in the white schools, the school district ordered the seven black teachers

back to posts in the black schools. The seven black teachers contested these assignments to black schools as violative of the district court's order to desegregate the faculty. As a result of the refusal of the black teachers to accept these assignments they were first demoted from teaching positions to "hall monitors" and clerks, and ultimately dismissed. The district court ordered the school board to canvass the school district for available teaching jobs in formerly all-white schools which could be manned by the seven black teachers. The school district reported back that no such positions were available. Under these circumstances the district court refused to require that the black teachers be employed in the white schools during the remainder of that school year (1969–70) or to hold the school district in civil contempt for the dismissals. Rather, the district court ordered that beginning with the 1970–71 school year, all teacher employment contracts contain a provision requiring that as a condition of future employment a teacher agree to accept any position offered where necessary to promote desegregation. Since this provision is in the contracts of all teachers now teaching in the defendant school district we anticipate no problem in placing these seven black teachers in the defendant school system for the 1971-72 term. If any difficulties arise, the district court possesses the equitable powers to deal with the situation. Swann v. Charlotte-Mecklenburg Board of Education, 1971, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554.

The United States, in its brief amicus curiae, recommended that the teachers not be given back pay because "the seven teachers not only failed to follow an administrative directive, but also disobeyed the prior instructions given by the District Court". It seems to me that disobedience of a court order and refusing to teach where assigned are grounds enough for dismissal.

The United States further recommended, however, that since the School Board had failed to follow court orders as to faculty desegregation under the *Singleton* rule the teachers should be reinstated. In other words, two wrongs make a right, or, else, court orders against one class of litigants will be vindicated, but not against others. This does not comply with my notion of justice, nor does it put the courts in a very effective light before the public.

In any event, I am glad that the United States did make the following general statement in its brief:

"So long as the school board does not engage in unconstitutional discrimination, it may achieve compliance with the faculty ratio in whatever manner it sees fit and, ordinarily, a teacher's dissatisfaction with a particular assignment will not raise issues of federal law."

This statement, if adhered to, lends some hope that the courts may some day be able to get out of the school houses and pursue their normal activities at the courthouses—a consummation which, I am sure, most, if not all, Judges hope to live to see.